### CASEMENT v. SQUIER, Warden.
### No. 355.

District Court, W. D. Washington, S. D.
Aug. 14, 1942.

Leroy L. Lomax, of Portland, Or., for petitioner.

J. Charles Dennis, U. S. Atty., and Oliver Malm, Asst. U. S. Atty., both of Tacoma, Wash., for defendant.

BLACK, District Judge.

The petitioner seeks a writ of habeas corpus releasing him from the United States Penitentiary at McNeil Island, where he is imprisoned under a life sentence by the United States Court for China by virtue of a conviction in that court of second degree murder, he having been accused by information in such court of the crime of murder in the first degree of a small child. Upon his arraignment the court appointed counsel for the petitioner who was without funds and was a member of the armed forces of the United States at Shanghai. The petitioner entered a plea of not guilty and demanded a trial before a jury of Americans, which motion was denied, and he was thereupon tried by the court.

The petitioner contends that his constitutional rights were violated by his being denied a jury trial.

The defendant warden admits that the petitioner was neither indicted by a grand jury nor tried by a petit jury. It is the warden's position that an accused person over whom the United States Court for China had jurisdiction does not have the right to demand either indictment by a grand jury or trial before a petit jury in that court. The warden insists that this question was definitely decided to such effect more than fifty years ago by the United States Supreme Court and cites the case of In re Ross (1890) 140 U.S. 453, 11 S.Ct. 897, 35 L.Ed. 581. The petitioner contends that the later decision of the United States Circuit Court of Appeals in Biddle v. United States, 9 Cir., 1907, 156 F. 759, is controlling.

There is a natural reluctance on the part of Americans at all times and especially in these days to approve the denial of a jury trial to any American. But upon a careful and detailed examination of those two cases, the statute, the treaty involved, and the historical background of the present United States Court for China and of the Consular courts, it clearly appears petitioner is mistaken in his contention that the Constitution of the United States guaranteed him a trial thousands of miles beyond the boundaries of the United States.

The United States Supreme Court has never questioned its decision in the "Ross" case [140 U.S. 453, 11 S.Ct. 900, 35 L.Ed. 581] that "the constitution can have no operation in another country".

In the instant case the petitioner by reason of his privilege of being tried in United States Court for China was not only provided with counsel by appointment of the court but also, as stated by the Circuit Court of Appeals in Biddle v. United States [156 F. 761], was surrounded with the "* * * beneficent principles of the laws of the United States relating to the trial of persons charged with crime—the rules of evidence, the presumption of innocence, the degree of proof necessary to convict, the right of the accused to be confronted with witnesses against him, exemption

from being compelled to criminate himself," etc.

If he had been tried in China before some other tribunal than such United States Court for China, he would not have even expected a jury of Americans. Can there be any doubt that an American would prefer to be tried before the United States Court for China without a jury than to be tried in a Chinese court? If petitioner had been tried before a military court he certainly would not have had a jury.

In Biddle v. United States, supra, cited by petitioner, there was no indictment by a grand jury, the accusation having been by information. It would seem from the language of that opinion that the defendant Biddle was also tried by the court without a jury.

It must be remembered that the United States Court for China, as pointed out by the United States Supreme Court in Ex parte Bakelite Corporation, 1929, 279 U.S. 438, 49 S.Ct. 411, 413, 73 L.Ed. 789, is a legislative court. In that opinion the Supreme Court said: "The United States Court for China and the consular courts are legislative courts created as a means of carrying into effect powers conferred by the Constitution respecting treaties and commerce with foreign countries. * * * The authority of Congress to create them and to clothe them with such jurisdiction has been upheld by this Court and is well recognized."

The United States Supreme Court in the "Ross" case with reference to such a legislative court—in that instance a consular court—said:

"In none of the laws which have been passed by congress to give effect to treaties of the kind has there been any attempt to require indictment by a grand jury before one can be called upon to answer for a public offense of that grade committed in those countries, or to secure a jury on the trial of the offense. Yet the laws on that subject have been passed without objection to their constitutionality. Indeed, objection on that ground was never raised in any quarter, so far as we are informed, until a recent period.

"It is now, however, earnestly pressed, by counsel for the petitioner, but we do not think it tenable. By the constitution a government is ordained and established 'for the United States of America,' and not for countries outside of their limits. The guarantees it affords against accusation of capital or infamous crimes, except by indictment or presentment by a grand jury, and for an impartial trial by a jury when thus accused, apply only to citizens and others within the United States, or who are brought there for trial for alleged offenses committed elsewhere, and not to residents or temporary sojourners abroad. Cook v. United States, 138 U.S. 157, 181, 11 S.Ct. 268 [34 L.Ed. 906]. The constitution can have no operation in another country. When, therefore, the representatives or officers of our government are permitted to exercise authority of any kind in another country, it must be on such conditions as the two countries may agree; the laws of neither one being obligatory upon the other."

In connection with the impracticality of either a grand jury or a petit jury abroad, the Supreme Court in that opinion said: "And, besides, their enforcement abroad in numerous places, where it would be highly important to have consuls invested with judicial authority, would be impracticable from the impossibility of obtaining a competent grand or petit jury. The requirement of such a body to accuse and to try an offender would, in a majority of cases, cause an abandonment of all prosecution."

In this instant case the petitioner in effect recognizes that the constitutional guarantee against accusations of capital or infamous crimes was not in force in China as he makes no objection to the charge having been brought against him by information instead of through the deliberation of a grand jury.

The decision In re Ross has never been questioned by any court. Congress in the face of that decision enacted the legislation which created the United States Court for China without providing for any right of trial by jury. Congress undoubtedly considered that any such requirement would from time to time create most difficult problems and complications.

The Act of Congress establishing such United States Court for China, 22 U.S.C.A. § 191, provides: "A court is hereby established, to be called the United States Court for China, which shall have exclusive jurisdiction in all cases and judicial proceedings whereof jurisdiction may have been exercised, prior to June 30, 1906, by United States consuls and ministers by law and by virtue of treaties between the United States and China, except insofar as the

said jurisdiction is qualified by sections 192 and 193 of this title * * *. The said court shall hold sessions at Shanghai, China, and shall also hold sessions at the cities of Canton, Tientsin, and Hankau at stated periods, the dates of such sessions at each city to be announced in such manner as the court shall direct, and a session of the court shall be held in each of these cities at least once annually. * * * The place of sitting of the court shall be in the United States consulate at each of the cities, respectively."

It is the argument of the petitioner that because at the particular time of his trial he alleges there were sufficient Americans then in Shanghai to provide him with an American jury, he was therefore under the Constitution entitled to such a jury.

But if under the Constitution he had a constitutional right of trial by jury at such particular time, then every defendant at any other time would have a right of trial by jury at Shanghai. And if there were not sufficient qualified Americans at any time present in Shanghai, then a defendant, under petitioner's contention, would not have to submit to a trial regardless of how grievous his offense.

And if the Constitution guarantees a defendant a right of trial by jury at Shanghai, then a defendant at Canton, Tientsin or Hankau would likewise have a similar right. Certainly Congress might well have anticipated that there might be occasions in those four places when there would not be a sufficiency of qualified Americans for either a petit jury or a grand jury.

No decision has been called to my attention involving a trial in the United States Court for China other than without a jury. The Circuit Court of Appeals for this circuit seems never to have questioned any conviction upon the ground either that there was no grand jury indictment or no jury trial, although in a number of decisions it affirmatively appears that the trial was had upon information and that the judgment was upon findings of the trial court. For instance, such appears in Husar v. United States, 9 Cir., 1928, 26 F.2d 847, where the decision of In re Ross is cited as authority upon one of the issues present in that case.

Petitioner, while claiming that the Biddle decision is authority for his contention that all of the constitutional guarantees applicable to a trial in a federal court in this country apply to a trial in the United States Court for China, omits any explanation of why the court in the Biddle decision made no mention of the conviction of Biddle having been upon information instead of upon grand jury indictment. Yet if the constitutional guarantee of trial by petit jury obtains in the United States Court for China certainly the other guarantee of presentment or indictment by grand jury would similarly be in force. However, petitioner does not even complain in this proceeding because there was no grand jury.

In the Biddle opinion there is no mention by the court of either a grand jury indictment or trial by petit jury. The appellant in that case apparently did not consider that he had either of those rights, at least he does not appear to have raised any question upon either of those points.

In Dorr v. United States, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128, 1 Ann.Cas. 697 involving trial procedure in the Philippines, our Supreme Court holds that the Constitution does not require trial by jury in every court outside of continental United States in territory where this country exercises some authority.

Although the United States Supreme Court long ago determined in clear-cut language that a defendant tried abroad had no constitutional guarantee of trial by jury, and although Congress at no time thereafter has provided by legislation for any jury trial abroad, still this petitioner asks this court to overrule the decision of the Supreme Court in the Ross case.

The decision of the lower court In re Ross, C.C., 44 F. 185, at page 187, ended with these words: "Under these circumstances, this court ought not to adjudge that the sentence imposed on the petitioner, and modified by the president, was utterly unwarranted and void, when the case is one in which his rights can be adequately protected by the supreme court, and when a decision by this court, setting the petitioner at liberty, although it might be reversed, would be practically irrevocable."

By reason of recent and present historical events involving Shanghai, the witnesses necessary to another trial for this petitioner could undoubtedly never in the future be presented before any court.

This court, therefore, like the lower court in the Ross case, should be satisfied that the rights of this petitioner "can be adequately protected" by the Circuit Court of Appeals and by the Supreme Court.

The petitioner does not claim that he was not afforded a fair trial aside from the denial of his demand for a jury. Inasmuch as unquestionably he obtained a trial more to his liking than he would have obtained in Shanghai in other than an American court sitting in Shanghai, and since the Supreme Court of this country has determined that the right of trial by jury does not obtain in an American court sitting in another country pursuant to treaty, it must be held that the allegations of petitioner's petition do not entitle him to release.